# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GARY HIRTE,**

    Plaintiff,

v.                                                                            **Case No. 20-CV-1467**

**BRIAN FOSTER,** *et al.*,

    Defendants.

## SCREENING ORDER

Plaintiff Gary Hirte filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his civil rights at the Waupun Correctional Institution. Hirte paid the civil case filing fee in full. This order screens the complaint.[1]

**1. Screening the Complaint**

*2.1 Federal Screening Standard*

Under the Prison Litigation Reform Act (PLRA) the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that

---

[1] The court has jurisdiction to screen the complaint in light of Hirte's consent to full magistrate judge jurisdiction and the Wisconsin Department of Justice's consent to limited magistrate judge jurisdiction, as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983 a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*1.2 Hirte's Allegations*

Hirte is an inmate at the Waupun Correctional Institution (WCI). (ECF No. 1, ¶ 3.) Defendants are or were Department of Correction (DOC) employees at WCI: Brian Foster was Warden; Weirenga was Deputy Warden; Tony Meli was Security Director; James Meunchow is an Inmate Complaint Examiner (ICE); Randy Mueller is Recreation Supervisor; Lt. Burns, Lt. Larsen, Sgt. York, Buwalda, and John Doe "unknown staff members" are correctional officers; Brad Hompe is a Corrections Complaint Examiner (CCE) with the DOC; Yana Pusich is an Inmate Complaint Supervisor with the DOC; and Cathy Jess, Matthew Greenwood, Paula Tiruveedula, Emily Davidson, and Cindy O'Donnell work in the Office of the Secretary of the DOC. (*Id.*, ¶¶ 4-20.)

Sometime in June or July 2016 Badger State Industries (BSI) hired Hirte to work as a "computer clerk" in the Metal Furniture 1 Shop (MF-1) at WCI. (ECF No. 1, ¶¶22-24.) This was a very coveted job that many inmates wanted. (*Id.*) Based on the complaint, it appears that BSI staff are separate from and/or not employed by WCI or the DOC.

Almost immediately after Hirte's hire Buwalda started telling him that "they would do whatever it takes to get him fired." (ECF No. 1, ¶ 22.) In the following weeks several correctional officers, including York, confirmed that Buwalda had been telling people that he didn't want Hirte working in MF-1. (*Id.*, ¶¶ 25-26.) Lieutenant Immerfahl (not a defendant) separately told Hirte that there were correctional

3

officers who didn't want Hirte working in MF-1, but they had been "overruled" by BSI staff. (*Id.*)

On July 18, 2016, Hirte began his new job in MF-1. (ECF No. 1, ¶ 27.) At some point after this date one of the other inmate clerks (Silas) got into trouble for inappropriate conduct on the computers. (*Id.*, ¶¶ 29-30.) As a result of Silas's conduct, all three inmate clerks (including Hirte) were temporarily placed in segregation pending an investigation. (*Id.*) During this time Hirte found out at that Larsen was the individual who did not want him working in MF-1. (*Id.*, ¶ 31.) Larsen said that he had been "overruled" regarding Hirte's hire and, if it was up to him, Hirte "would've been placed in seg long ago" and "would never work at BSI again." (*Id.*)

Eventually, Silas was removed from the job at BSI and the other inmate clerk returned to the job at BSI. (ECF No. 1, ¶¶32-34.) Hirte, however, was not allowed to go back to work due to alleged "changes in the computer system." (*Id.*, ¶ 35.) As Hirte awaited returning to his job, co-workers told him that Buwalda was trying to prevent him from returning. (*Id.*, ¶ 36.) Hirte later found out that the "changes" in the computer system that allegedly prevented his timely return were minor updates/adjustments that should not have affected his return to work. (*Id.*, ¶ 37.)

Hirte finally returned to his job almost two months later. (ECF No. 1, ¶ 37.) That same day staff brought Hirte into a meeting. (*Id.*, ¶ 38.) Many people were at this meeting, including correctional officers and BSI staff. (*Id.*) Larsen made vague threats toward Hirte about not doing "anything else wrong" or else he'd be fired from the job. (*Id.*) Larsen had no explanation as to what Hirte had done wrong. (*Id.*) After

4

the meeting several BSI staff members apologized to Hirte about Larsen's hostile behavior. (*Id.*) They said that they didn't know why Larsen wanted to fire him given that Hirte was such a good worker. (*Id.*) BSI staff later wrote an incident report about Larsen's hostile behavior toward Hirte at the meeting. (*Id.*)

Soon after Hirte's return to the job, he started getting more responsibilities from BSI staff, including duties on a different floor. (ECF No. 1, ¶¶ 38-40.) Buwalda was responsible for transporting Hirte between the floors. (*Id.*) Buwalda made this process very difficult by verbally harassing him, bullying him, and delaying things. (*Id.*, ¶¶ 41-43.) On several occasions Hirte was not able to complete his duties for that day because Buwalda delayed in transporting him between floors. (*Id.*) During this time BSI staff and other inmates regularly warned Hirte that Buwalda wanted him gone. (*Id.*)

On August 21, 2017, Hirte filed an inmate complaint about Buwalda. (ECF No. 1, ¶ 44.) Apparently Buwalda had been leaving his MF-1 shifts early, which was costing inmates employment money. (*Id.*) The inmate complaint was "finalized" on August 31, 2020. (ECF No. 1, ¶ 44.) Ten days later, on September 8, 2020, Hirte received a "minor" conduct report for theft based on allegations that he stole label paper from BSI. (*Id.*, ¶ 45.)

Hirte explains that "minor" conduct reports do not require due process procedures, so his guilt was "predetermined." (ECF No. 1, ¶¶ 46-54.) He states that evidence existed showing that he didn't steal the label paper, including statements from a BSI staff member who confirmed that the type of label paper found in Hirte's

5

cell was not available at BSI, but the evidence was ignored. (*Id.*) Hirte notes that Burns, who "approved" the minor conduct report, was also the individual who found him guilty of the minor conduct report. (*Id.*) Hirte appealed the decision. (*Id.*) Foster, Weirenga, and Meunchow all reviewed the decision and affirmed it. (*Id.*)

Following the finding of guilt, the Workplace Committee (WPC), consisting of Larsen, Meli, and a BSI supervisor, re-evaluated Hirte's employment and removed him from his BSI job. (ECF No. 1, ¶¶55-60.) The BSI supervisor kept telling Larsen and Meli that Hirte didn't steal anything but "Larsen and Meli wanted Hirte gone from BSI, so they made it happen." (*Id.*) According to Hirte, correctional staff (i.e., Buwalda, Larsen, and York) wanted to reserve BSI jobs for inmate "informants" and Hirte refused to serve that role. (*Id.*) As a result, they used the inmate complaint he filed as a reason to retaliate against him and remove him from the job. (*Id.*)

The retaliation continued even after Hirte was removed from his BSI job. (ECF No. 1, ¶¶ 61-74.) At first, Hirte got a new job as a Public Service Worker (PSW) fairly quickly. (*Id.*, ¶¶ 63-64.) But Hirte continued to write grievances to "everyone he could think of" regarding removal from his old job due to his inmate complaint. (*Id.*, ¶ 65.) Burns then changed Hirte's inmate status from Involuntary Unassigned (a favorable status) to Voluntary Unassigned (an unfavorable status). (*Id.*, ¶¶ 62, 65, 70.) Voluntary Unassigned status meant that Hirte could no longer work as a PSW, he had to share a cell, he was removed from the recreation list, and he had limited access to the library. (*Id.*) Hirte notes that other inmates who committed more serious infractions (including Silas) were only placed on Involuntary Unassigned status,

6

while he was placed on Voluntary Unassigned status. (*Id.*, ¶¶72-74.) Mueller, the PSW supervisor, stated that, if Hirte hadn't fought the minor conduct report, "they would have left you alone." (*Id.*, ¶¶ 68-69.) With every inmate complaint and appeal Hirte filed, Foster, Weirenga, and Meunchow, continued to affirm the initial decision. (*Id.*, ¶ 71.)

Hirte appealed the minor conduct report through a *writ of certiorari* in Wisconsin state court. (ECF No. 1, ¶¶ 75-76.) Hirte states that Pusich was responsible for sending the state court judge a full record of his minor conduct report but she missed one page. (*Id.*, ¶ 77.) The state court judge ordered Pusich to produce the missing page. (*Id.*) The state court judge overturned the minor conduct report for lack of evidence. (*Id.*, ¶ 75.) Hirte then tried to get his job back, but Foster denied the request. (*Id.*) When a job did later open up, it was given to another inmate. (*Id.*) Hirte also tried to resolve his retaliation claim through a *writ of certiorari* in state court but he was directed to file a §1983 lawsuit instead. (*Id.*, ¶ 78.)

For relief Hirte seeks monetary damages, a declaration that his rights were violated, and several injunctions. (*Id.*, ¶¶ 125-171.)

*1.3 Analysis*

Hirte seeks to proceed with a First Amendment retaliation claim, an Eighth Amendment harassment claim, and a Fourteenth Amendment substantive due process claim. (ECF No.1, ¶¶ 80-124.)

### 1.3.1 Section 1983's Personal Involvement Requirement

Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) An individual must cause or participate in an alleged constitutional deprivation. *Id*. "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of people they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under § 1983. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).

The court will dismiss Hompe, Jess, Greenwood, Tiruveedula, Davidson, and O'Donnell from this case because Hirte does not allege any facts against them in the complaint. Hirte names these individuals as defendants in the caption of the complaint, and he explains that they worked in the Office of the Secretary, but that is not enough to satisfy §1983's personal involvement requirement. Hirte does not state what they knew about his situation or what they did (or did not do) to violate his constitutional rights.

The court will also dismiss Foster, Weirenga, and Meunchow. Their personal involvement was limited to ruling on his minor conduct report and/or subsequent inmate complaints. Complaint examiners are not liable under §1983 for carrying out their jobs "exactly as [they were] supposed to." *Burks*, 555 F.3d at 595. Nothing in the complaint suggests that these individuals "routinely sen[t] each grievance to the

8

Case 2:20-cv-01467-WED   Filed 10/26/20   Page 8 of 14   Document 5

### 1.3.1 Section 1983's Personal Involvement Requirement

Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) An individual must cause or participate in an alleged constitutional deprivation. *Id*. "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of people they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under § 1983. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).

The court will dismiss Hompe, Jess, Greenwood, Tiruveedula, Davidson, and O'Donnell from this case because Hirte does not allege any facts against them in the complaint. Hirte names these individuals as defendants in the caption of the complaint, and he explains that they worked in the Office of the Secretary, but that is not enough to satisfy §1983's personal involvement requirement. Hirte does not state what they knew about his situation or what they did (or did not do) to violate his constitutional rights.

The court will also dismiss Foster, Weirenga, and Meunchow. Their personal involvement was limited to ruling on his minor conduct report and/or subsequent inmate complaints. Complaint examiners are not liable under §1983 for carrying out their jobs "exactly as [they were] supposed to." *Burks*, 555 F.3d at 595. Nothing in the complaint suggests that these individuals "routinely sen[t] each grievance to the

shredder without reading it" or that they did their jobs with deliberate indifference toward the "faithful implementation of the grievance machinery." *Id*. Moreover, Hirte's conclusory allegations that Foster, Weirenga, and Meunchow "ignored," "condoned," or "perpetuated" a constitutional violation (presumably because they are supervisory staff at the institution) is not enough to state a claim under §1983. Section 1983 does not allow for vicarious liability.

Finally, the court will dismiss John Doe "unknown staff members." Hirte appears to use the John Doe defendants as a placeholder in case he later identifies additional legal claims/causes of action. (*See* ECF No. 1, ¶ 124.) But Hirte has not alleged any facts or claims against John Doe "unknown staff members."

### 1.3.2 First Amendment Retaliation

To state a first amendment retaliation claim Hirte must allege that: (1) he engaged in activity protected by the first amendment; (2) he suffered a deprivation that would likely deter first amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017)(citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)); *see also Streckenbach v. Meisner*, 768 F. App'x 565, 569 (7th Cir. 2019) (citing *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017)).

Hirte states that he filed an inmate complaint about Buwalda leaving his shifts early, which caused inmates to lose employment money. Shortly after filing his complaint, Buwalda, Larsen, York, Burns, and Meli worked together to remove Hirte from his BSI job and, later, from his PSW job. Removal from employment could deter

9

future first amendment protected activity. Thus, Hirte may proceed with a first amendment retaliation claim against Buwalda, Larsen, York, Burns, and Meli.

Hirte may not proceed with a first amendment claim against Mueller. Hirte states that Mueller allegedly told him that the retaliation wouldn't have happened if Hirte hadn't challenged the minor conduct report and/or filed additional inmate grievances. But Hirte does not allege that Mueller knew about the plan to retaliate *before* it happened or that Mueller was in a position to intervene to prevent the retaliation. *See e.g. Fillmore v. Page,* 358 F.3d 496 (7th Cir. 2004) (concluding that a failure to intervene claim requires that a defendant have a realistic opportunity to step forward to prevent another officer from violating a plaintiff's rights.) Mueller will be dismissed from this case.

### 1.3.3 Eighth Amendment Harassment

The eighth amendment proscribes cruel and unusual punishment. U.S. Const. amend. VIII. "Simple or complex, most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). As the Seventh Circuit has long explained, "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

Hirte states that Buwalda, York, and Larsen verbally harassed him for months by threatening to fire him from his BSI job. While some forms of verbal harassment may constitute cruel and unusual punishment, *see e.g. Beal*, 803 F.3d at 358

(concluding that plaintiff stated a claim under the eighth amendment when he alleged that defendants called him a homosexual and told him to place his penis inside another inmate), Hirte's allegations do not rise to that level. In *Beal* defendants' verbal harassment increased the likelihood that the plaintiff would be sexually assaulted by other inmates. Hirte did not face a similar threat of physical harm from defendants' harassment. As a result, he may not proceed with an eighth amendment harassment claim against these individuals.

### 1.3.4 Fourteenth Amendment Substantive Due Process

The fourteenth amendment prohibits state officials from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is generally found in the *procedures* mandated by due process." *See Lagerstom v. Kingston*, 463 F.3d 621, 623 (7th Cir. 2006) (emphasis added). However, "[i]ssuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right." *Black v. Lane*, 22. F.3d 1395, 1402-03 (7th Cir. 1994).

Hirte states that Buwalda, Larsen, York, and Burns fabricated the minor conduct report in retaliation for his filing an inmate complaint about Buwalda. Writing an inmate complaint is a constitutionally protected right. *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). Accordingly, Hirte may proceed with a

11

fourteenth amendment substantive due process claim against Buwalda, Larsen, York, and Burns.

The court will dismiss Pusich from the case. Hirte states that Pusich omitted one page of evidence when she sent the record of his minor conduct report to the state court judge. The state court judge resolved this issue by ordering her to send the missing page. The judge then relied on the evidence to overturn the minor conduct report. Hirte, therefore, has no injury based on Pusich's conduct. Hirte fails to state a due process claim against Pusich.

### 3. Conclusion

**THEREFORE, IT IS ORDERED** that Foster, Weirenga, Meunchow, Hompe, Jess, Greenwood, Tiruveedula, Davidson, O'Donnell, Pusich, Mueller, and John Doe "unknown staff members" are **DISMISSED** from this lawsuit.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Meli, Burns, Larsen, York, and Buwalda. It is **ORDERED** that, under the informal service agreement, these defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Hirte is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Hirte is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Hirte is reminded that it is his responsibility to promptly notify the court if he is released from custody or

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

13

transferred to a different institution. Hirte's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Hirte may find useful in prosecuting his case.

Dated at Milwaukee, Wisconsin this 26th day of October, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge